**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TENTH AND STATE, LLC,<br>SWING PROJECT ERIE, LLC<br>*Plaintiffs*, | ) | |
| v. | ) | No. 1:24-cv-176 |
| THE CITY OF ERIE,<br>ERIE WATER WORKS,<br>SCOTT HEITZENRATER,<br>ANDY ZIMMERMAN,<br>JASON SAYERS,<br>*Defendants*. | ) | JURY TRIAL DEMANDED |

**COMPLAINT**

Plaintiff Tenth and State, LLC, by its attorneys at the Mizner Law Firm, files this Complaint and states as follows:

**INTRODUCTION**

The City of Erie is "eager to assist businesses with their development and expansion plans."[1] Reflecting on his time as chief executive of the City, on January 24, 2024, Mayor Joseph Schember wrote in the Erie Times News that he has worked "to support transformational projects throughout Erie," and that "we have a city team committed to finding funding to improve the quality of life for residents and businesses."[2] However, the reality for new businesses is quite different in practice, as one new venture is quickly learning.

---

[1] City of Erie website, "Economic Development." https://cityof.erie.pa.us/government/economic-community-development/economic-development/

[2] Erie Mayor Joe Schember reflects on the state of the city - 'exciting stories to tell.' Erie Times-News, January 23, 2024. https://www.goerie.com/story/opinion/columns/2024/01/23/erie-mayor-joe-schember-2023-2024-goals-economic-development-criz-crime-housing-inclusion-blight/72321816007/

Mere weeks before Plaintiff Swing Project Erie was set to open to the public, after months and millions of dollars spent renovating a building on a highly-visible corner in downtown Erie, it was side-tracked twice: first by the negligent misdirection of water into its basement, and second, by retaliation by city employees after the Plaintiffs dared to ask the City for help resolving the issue. Rather than working promptly to identify their own error and fixing the problem so stormwater runoff no longer entered Tenth and State's basement, the City's employees threatened to withhold Plaintiffs' occupancy permit for the building, based on the slope of the sidewalk the City's agents had poured, which the City was now deeming out of compliance with accessibility requirements.

The threat to withhold Plaintiffs' occupancy permit was made just five (5) days after the City employees refused to acknowledge or correct its role in the flooding, and directed all concerns to the City solicitor's office - clearly demonstrating the retaliatory nature of the threat. Because of the actions of various City employees, the City is liable, not only for the significant water damage it has negligently caused to a building into which Tenth and State has just invested millions of dollars, but also for the unconstitutional retaliation of its employees, who are attempting to stop Plaintiffs from exercising their First Amendment rights to petition the government for redress of its grievances.

No one doubts the Mayor's commitment to economic development and job creation. Unfortunately, either Mayor Schember's aspiration "to support transformational projects throughout Erie" does not bear the weight to hold his own team accountable to carry out this directive, or he has failed to make his staff understand what it means in the first place. Either way, the City employees should not be an obstacle to redevelopment in the City, and must stop its bureaucratic bullying of the small business investing in downtown Erie.

## PARTIES

1. Plaintiff Tenth and State, LLC, is a Pennsylvania limited liability company with a registered address in Erie County, Pennsylvania, which owns the real property located at 5 W. Tenth Street, Erie Pennsylvania (the "Property").

2. Plaintiff Swing Project Erie, LLC, is a Pennsylvania limited liability company with a registered address in Erie County, Pennsylvania, and which leases real property from Plaintiff Tenth and State, LLC.

3. Defendant City of Erie is a Commonwealth City of the Third Class, capable of suing and being sued, with headquarters located at 626 State Street, Suite #400, Erie, Pennsylvania16501.

4. Defendant Erie Water Works is a public utility capable of suing and being sued, with headquarters located at 240 W. 12th St, Erie, Pennsylvania 16501.

5. Defendant Scott Heitzenrater is an adult individual who at all times relevant was employed by Defendant City of Erie as a Building Inspector. Defendant Heitzenrater was at all times acting under color of state law, and is sued in his individual capacity.

6. Defendant Andy Zimmerman is an adult individual who at all times relevant was employed by Defendant City of Erie as the Manager of the Bureau of Code Enforcement. Defendant Zimmerman was at all times acting under color of state law, and is sued in his individual capacity.

7. Defendant Jason Sayers is an adult individual who at all times relevant was employed by Defendant City of Erie as the City Engineer; however, as of January 2024, Mr. Sayers was promoted to the City of Erie's Director of Public Works. Defendant Sayers was at all times acting under color of state law, and is sued in his individual capacity.

## JURISDICTION AND VENUE

8. This action is being brought under the Civil Rights Act, 42 U.S.C. § 1983 which provides a cause of action for the "deprivation of any rights, privileges, or immunities secured by the Constitution and the laws" of the United States.

9. This Honorable Court has jurisdiction over these federal claims pursuant to 28 U.S.C. §§ 1331 & 1343.

10. This Complaint also includes pendent state law claims, over which this Honorable Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

11. This Court has jurisdiction over these claims pursuant to under 28 U.S. Code § 1332.

12. Venue is proper in the Western District of Pennsylvania pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this claim occurred within the territorial jurisdiction of this District and the Defendants are subject to personal jurisdiction within this District.

## FACTS

13. Tenth and State owns a building in downtown Erie, situated at 5 W. Tenth Street, Erie Pennsylvania (the "Property"), which is located at the intersection of State Street and Tenth Street in the City of Erie.

14. Tenth and State has invested several million dollars into renovating the interior and exterior of the Property, for the purpose of operating a "Five Iron" franchise and expanded renovations of Cafe 7-10, which provides an arcade and indoor golf simulators for the public to use and enjoy, along with kitchen and bar service.

15. Swing Project Erie has leased the Property from Tenth and State, and serves as the franchisee and operator of the 5 Iron business.

16. The renovation started with interior demolition which began on July 14, 2023, which consisted of gutting the interior of the large commercial building on the Property.

17. On July 28, 2023, core renovations began, and renovations specific to 5 Iron began on September 26, 2023.

18. The renovations consisted of construction work on three levels of the Property: the basement, the first floor, and the second floor.

19. The renovation included the installation of façade updates, full interior renovation consisting of a new bar, a kitchen, a fire sprinkler system, an HVAC system, electrical rework, lighting, plumbing upgrades, polished concrete floors, golf simulator construction, new elevator, and new staircase.

20. The renovation work was substantially completed, and the Five Iron golf operation and Cafe 7-10 was scheduled to open to the public in mid-April, to coincide with the Masters golf tournament in Augusta, Georgia.

21. As renovation work was progressing on the Property, the City of Erie was undertaking a $5.8 million "streetscape" project on State Street, which the Erie Times-News reported included "new sidewalks, trees and drainage systems."[3]

22. In particular, the City's streetscape project included the installation of "soil cells" in the sidewalk area between State Street and the various buildings, including the Property, in which trees were to be planted. Generally speaking, this work took place in two phases: first, soil cell inlet basins and soil cells were installed along State Street, and second, the sidewalk was

---

[3] Disruptions on State Street are temporary as city works on $5.8 million facelift. Erie Times News, October 9, 2023.

demolished and re-installed along State Street.

23. City engineer Jason Sayers created the design of the streetscape project, and included several design flaws in the written plans.

24. For example, Mr. Sayers' designs indicated that some of the buildings on State Street, in the area of the streetscape improvements, had basements, while others did not.

25. Where Mr. Sayers indicated basements existed, he did not include the "soil cells" in the adjacent sidewalk; for example, beside Gannon University's building on 9th and State Streets, and beside the HANDS Boston Store at 716 State Street.

26. Mr. Sayers' designs incorrectly identified the Property, as not having a basement, and planned that soil cells would be constructed in the sidewalk between the Property and State Street.

27. Thus, Mr. Sayers' designs indicate an intent to keep soil cells away from basements, yet failed to do so because the Property was incorrectly identified as being without a basement.

28. Another example of the design flaws, is that the stormwater system was designed to collect stormwater, and provide that water to trees in the soil cells via overflow piping.

29. However, once the overflow stormwater entered the soil, there was no barrier designed to prevent or impede such water from infiltrating the foundations of the adjacent buildings.

30. While Mr. Sayer did indicate a "root and moisture barrier" was to be installed vertically along the infiltration areas, the base of the soil cells was designed to be a "sub-base/drainage layer," which does not impede the flow of water in the surrounding native soil.

31. This design is deeply problematic and fundamentally flawed: if the soil cells were considered "stormwater holding facilities," they violate the City of Erie's own Stormwater Management Ordinance, which specifically restricts the placement of such facilities within twenty-five (25) feet of a building.

32. If, on the other hand, the soil cells were not intended to be "stormwater holding facilities," then the City has installed a system specifically designed for surface stormwater to infiltrate into the native soil in direct proximity to the foundations of the adjacent buildings, and the basement of the Property.

33. The new concrete sidewalk alongside the Property was poured by the City in approximately October 2023, including the new soil cells.

34. However, shortly after the pre-existing sidewalk was removed, and new soil cells and sidewalks were installed, a small amount of water was observed on the basement wall, on the State Street side of the Property.

35. For many decades prior, there was no history of water entering the basement on the Property.

36. The appearance of water in the basement delayed the electrical work at the Property for approximately one month, as the flooding was near the electrical panels.

37. Conditions worsened on February 6, 2024, when following a significant rainfall, large amounts of water entered the basement of the Property, as shown below:

 

38. The water appeared to be entering at the base of the basement wall, on the State Street side of the building, near active electrical devices.

39. The water damage required Plaintiff Tenth and State to remove large portions of the drywall which had just been installed, and to dig and install french drains along portions of the basement, just to remove the water which was entering the basement.

40. Plaintiffs contacted the City of Erie and the City's Water Works ("EWW") which promptly tested the standing water in the basement.

41. Erie Water Works advised that it was not the source of the water, as any "City Water" would have certain chemicals added by the utility to ensure it was potable. It advised that no such chemicals were present, as expected, in the flood water in the basement.

42. The City of Erie advised that it cleaned out the inlet catch basins and camera scoped the soil cell perforated piping adjacent to the Property, and found no concerns with its

system.

43. The City, through Field Supervisor Todd Bruno, advised that EWW's potable water pipes were likely the source of the water, and offered no solution as to how to resolve and stop the ongoing flooding issue on the Property.

44. Concerned by the ongoing water in its basement, Plaintiff Tenth and State commissioned Microbac Laboratories, Inc to conduct its own testing of the floodwater, which collected water samples from the Property basement on February 16, 2024.

45. This independent testing indicated that the water was coming from the City streets, because of the presence of "high chloride values in the samples." Chloride is the main chemical in the salt which the City adds to the streets and sidewalks during winter.

46. Based on this data, Steve Kopac, a civil engineer, provided analysis which stated in part:

> Based upon the results I would say the runoff is coming from the roadway/tree boxes. I don't have the details of the tree box to confirm its construction. Based on the time of year and the use of salt on the roads, that would lead to the high chloride values in the samples. In addition, the filtration of the tree box should reduce/absorb some of that, so it makes sense that you see a reduction in that value in the sump water. The potable water sample is nowhere near the values of the other two so I think you can rule that out.

47. These laboratory results were provided to the City of Erie's engineering department.

48. On February 29, 2024, Todd Bruno responded, not with any type of assistance, but with the adversarial direction to contact the Solicitor's office:

> In regards to 5 West 10th Street (Water Issue), The City of Erie Bureau of Engineering will not be moving forward with any actions on this matter. Please reach out to Colleen Borzon (814-870-1233) in our Solicitor's Office if you have any further questions or concerns.

49. Later that same day, a member of Tenth and State emailed Ms. Borzon, requesting assistance to resolve the ongoing flooding issue in the Property's basement.

> The approach indicated by Mr. Bruno's email leads me to believe that the City is confident in its lack of responsibility for our ongoing water intrusion issue. The problem with that approach is that the basement of the building never had water before the soil cell and planter installations that were done last year as part of the streetscape project. Our independent Microbac test results show the presence of salt in the intruding water, which indicates that it is likely coming in from the street and sidewalk level.
>
> Now that the soil cell and boxes have experienced several rains and have likely become saturated, we believe they are the cause of that water infiltration, as nothing else has changed. If Mr. Bruno's email directing me to counsel doesn't look enough like deferred acknowledgement of responsibility, additional testing, which I'm also paying for, should serve as additional confirmation in short order. In addition to the water issue, we've also noticed that the sidewalk is also inexplicably pitched in excess of ADA accessibility requirements, and since the accessibility activists in town are already targeting this project, I have to start accounting now for reserves to handle that issue, which will also become costly if we are forced to remedy ourselves.
>
> The water issue is already costing us every day. If the water issue or accessibility issue causes any delay in open date (4/12), or interruption of the business after open, consequential damages are going to be substantial. I have counsel engaged and continually being updated with mounting damages. I have also begun engaging other businesses in the streetscape path to join, as we believe the same is or will be happening for others with basements in due time.
>
> I can be very reasonable and forgiving when I perceive good faith on the other side. This is not good faith. This is the classic bureaucratic approach - short-term decision making motivated by self preservation. Unfortunately, this approach always ends up far more costly to taxpayers, than an action-driven accountability-based approach.
>
> If I don't have a response from someone on this list by noon tomorrow that indicates that I should take a more benevolent path, the legal and public forum full court press will begin as soon as I finish my lunch. It's been weeks, and we need to rectify this so that we can open on schedule. We are out of time. I look forward to hearing from you.

50. This plea for a common-sense, amicable and cooperative resolution fell on deaf ears and is completely inconsistent with Mayor Joseph Schember's statement about the City working "to support transformational projects throughout Erie."

51. Instead of working to resolve the flooding issue which the City had created, the City turned its considerable resources and power to a more unproductive and unconstitutional effort - retaliation.

52. On or about March 5, 2024, Scott Heitzenrater, a City Building Inspector, advised Tenth and State's contractor that the State Street sidewalk leading up to the Property's main State Street entrance, was excessively sloped in violation of the applicable code, and that the City would not issue a building occupancy permit to Tenth and State unless the slope of the sidewalk was reduced.

53. This was the very sidewalk which the City itself had installed, only five months before, without any input or control by Tenth and State as to their specifications or slope.

54. Seeking to clarify the matter, Plaintiff Tenth and State reached out to Mr. Heitzenrater and requested a time to speak with him about the sidewalk leading to the Property's State Street entrance:

> Please let me know when you have time to discuss the sidewalk and State Street entrance of 1000 State. I want to make sure that I hear directly from you what Josh [Tenth and State's Contractor and Project Manager] explained to me today about the pitch of the sidewalk, frost slab, etc. In the alternative, you can respond to this email with a written explanation, as I'll need something to work with as I take my next steps.

55. Mr. Heitzenrater responded by telling Plaintiff Tenth and State to speak to their own architect, because the slope of the "landing" outside the Property's doors was more sloped than legally permitted:

> Drew, you should contact your architect as to the comments from BIU and also any future changes. As a means of egress the Exterior doors are still required to have a landing on the exterior side. This landing is required to have maximum 2% slope regardless of accessibility. The current slope is 7.9 %. The doors did comply when they were inset in their former location. If you plan to relocate the accessible entrance we would require an updated plan.

56. Inexplicably, Mr. Heitzenrater did not address or even acknowledge the fact that the "landing" which he described **was the sidewalk which the City had just installed**.

57. Mr. Heitzenrater simply ignored the fact that he was threatening to withhold an occupancy permit over the slope of a brand-new sidewalk which the City installed and that Tenth and State had no control over, for a building which the City was actively refusing to acknowledge it was flooding with water runoff from its new soil cells.

58. Frustrated by the City's obvious retaliation for Plaintiff Tenth and States' efforts to resolve the flooding issue, on March 8, 2024, Tenth and State's member responded to Mr. Heitzenrater, "This response is going to lead to a bad outcome for you and the City. We will be in touch."

59. Rather than de-escalating the situation, and working to resolve both (1) the ongoing flooding, and (2) the absurd claim that the City would withhold the occupancy permit based on the slope of the sidewalk the City had installed, the City's Manager of the Bureau of Code Enforcement, Andy Zimmerman, apparently decided the best course of action was to "turn the tables," and accuse Tenth and State's member of threatening Mr. Heitzenrater.

60. On March 11, 2024, Mr. Zimmerman wrote:

> The response you sent Scott Heitzenrater is of a threating [sic] nature. Scott takes great pride while performing his job duties and understands the codes better than most inspectors in the State. Because you moved the doors and changed the egress and accessible requirements you are required under State law to comply with A117.1.

61. In short, the City has responded to flooding it created, by first threatening to withhold the occupancy permit over the slope of a sidewalk that it poured, and then accusing Tenth and State's member of "threatening" City officials, when it justifiably complained about this outrageous conduct.

62. In March 2024, Erie Water Works performed limited excavation of the sidewalk beside Tenth and State's Property on State Street, for the purpose of expanding the water pipes servicing the building, and for adding a fire suppression system.

63. During that work, water could be visually observed flowing into the open areas of excavation from the surrounding soil.

64. Moreover, when Erie Water Works turned off water to the area for the purpose of installing the new piping to the building, the water flowing into the open excavation noticeably decreased.

65. Erie Water Works responded to these indications that its piping was the source of water on the Property, by conducting additional tests, and placing sensors to identify whether and where any leaks were occurring.

66. To date, none of Erie Water Works testing has indicated the source and manner of the water which is continuing to flood the Property.

67. To further mitigate the ongoing flooding, Plaintiff Tenth and State has been forced to perform a second series of french drain installation along the exterior wall, to collect incoming water and divert it to a sump pump system. This second series of french drains cost in excess of $12,900.00.

68. Through March 8, 2024, the total cost associated with merely de-watering the

Property's basement, and repairing the water damage, exceeds $70,000.

69. In addition, the City refused to re-pour the sidewalk that it poured out of compliance with ADA standards, which resulted in my clients having to pay for the removal and repouring of such sidewalk for compliance, to mitigate any further delay of an open date. The cost of this mitigation, which is not final, currently exceeds $14,000.

70. Plaintiff 5 Iron's opening date was set back by two months, and as a result has incurred hundreds of thousands of dollars in damages and losses, all of which are continuing to accrue as the flooding continues, the City of Erie delayed issuance of the occupancy permit for retaliatory reasons, and revenue is lost due to inability to open for business.

71. Based on the projected annual profits of 5 Iron, and the fact the two months of missed operations occurred during the early spring, when the weather typically makes outdoor golf less possible and less enjoyable for golfers, this two month delay in opening has already cost the Plaintiffs approximately $110,000.00 in lost profits.

72. This delay in opening, which was entirely caused by the Defendants' conduct, has caused other financial losses as well, including:

a) Tenth and State hired three full-time employees two months early, causing a loss of $30,000.00.

b) Tenth and State also began marketing the new venue two months early, causing it to effectively waste approximately $10,000.00 in marketing expenses.

c) Tenth and State has been forced to cover debt service and costs associated with the Property for two months without earning any revenue, resulting in approximately $50,000.00 in losses.

d) Plaintiffs reasonably anticipate that their insurance premiums will be increased,

due to the significant and ongoing water losses to the Property.

**COUNT I - RETALIATION IN VIOLATION OF THE FIRST AMENDMENT**

*Tenth and State, LLC and Swing Project Erie, LLC*
*v.*
*Andy Zimmerman and Scott Heitzenrater*

73. The averments in the foregoing paragraphs are incorporated by reference herein, as if set forth in full below.

74. To plead a plausible First Amendment retaliation claim, plaintiffs are required to allege three elements: (1) "[they] engaged in constitutionally protected conduct, (2) there was retaliatory action sufficient to deter a person of ordinary firmness from exercising [their] constitutional rights, and (3) there was a causal link between the constitutionally protected conduct and the retaliatory action." *Conard v. Pa. State Police*, 902 F.3d 178, 183 (3d Cir. 2018) (quoting *Mirabella v. Villard*, 853 F.3d 641, 649 (3d Cir. 2017)).

75. To state a claim for retaliation against a particular defendant, a plaintiff must allege either participation in the retaliation, or knowledge and acquiescence, by the defendant(s) involved. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior.* Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.").

76. Here, Plaintiffs raised legitimate concerns, based upon independent third party laboratory results, that City stormwater runoff was entering the basement on its Property.

77. Five (5) days after Plaintiffs reported this issue to City Solicitor's office, City employee Scott Heitzenrater advised Plaintiffs' contractor that it would not issue an occupancy permit for the Property until Tenth and State changed the slope of the sidewalk which the City had poured outside the building, *five (5) months earlier*.

78. When Plaintiffs protested this retaliatory treatment by Mr. Heitzenrater, Mr. Zimmerman doubled down on the City's position by claimed Plaintiffs were "threatening" city employees, when in fact it was the City's employees who were threatening to withhold an occupancy permit, in blatant retaliation for Plaintiffs' complaints about the flooding on the Property.

79. As a result of these City employees' retaliatory actions, not only has the flooding issue not been resolved, but the occupancy permit was substantially delayed, preventing Plaintiff Swing Project Erie from opening on schedule, and forcing Plaintiffs to spend additional funds to repair a sidewalk slope problem solely caused and created by the city.

80. Withholding Plaintiffs' occupancy permit, has caused substantial harm to Plaintiffs, including:

   a. Lost profits;

   b. Significant additional costs in replacing a brand-new City sidewalk;

   c. Impaired ability to meet financing obligations, which had assumed that Swing Project Erie would be open and operating by the second weekend in April 2024;

   d. Lost business opportunity;

   e. Lost goodwill; and

   f. Other harm which is likely to accrue in the future as the reasonably foreseeable result of the City employee's illegal conduct.

WHEREFORE, Plaintiffs Tenth and State, LLC, and Swing Project Erie, LLC respectfully request that this Honorable Court enter judgment in its favor and against Defendants Andy Zimmerman and Scott Heitzenrater, in an amount in excess of $75,000.00, along with all other relief permitted by law.

**COUNT II - NEGLIGENCE**

*Tenth and State, LLC and Swing Project Erie, LLC*
*v.*
*City of Erie and Erie Water Works*

81. The averments in the foregoing paragraphs are incorporated by reference herein, as if set forth in full below.

82. The City of Erie and Erie Water Works had a duty to construct, inspect and maintain its real property, including its streets, sidewalks, soil cells, and stormwater maintenance systems, in a reasonably careful manner to avoid injury to adjacent properties. See Burke v. City of Bethlehem, 2009 Pa. Dist. & Cnty. Dec. LEXIS 517, *9 ("A municipality owes this duty to the public at large and typically satisfies this responsibility by ensuring that any dangerous conditions are remedied by the adjacent property owner.") *citing Reedy v. City of Pittsburgh,* 69 A.2d 93, 94 (Pa. 1949); see also *Koerth v. Borough of Turtle Creek,* 49 A.2d 398, 399 (Pa. 1946)("It is, of course, the duty of a municipality to maintain its sidewalks in a reasonably safe condition or, rather, when it has reasonable notice express or implied of a defective condition").

83. Here, the City of Erie and Erie Water Works have breached their duty by constructing and maintaining sidewalks and soil cells, and subsurface piping, in a manner which causes water to enter the basement of Tenth and State's Property.

84. The City of Erie does not enjoy municipal liability related to this breach of its

duty. *See Glencannon Homes Ass'n v. N. Strabane Twp.*, 116 A.3d 706, 718 (Pa. Commw. Ct. 2015) (Holding, a municipality's conduct related to stormwater runoff was an exception to the immunity granted under the PSTCA); citing *DeTurk v. South Lebanon Township*, 116 Pa. Commw. 557, 542 A.2d 213 (Pa. Cmwlth. 1988) (township liable under utility service facilities' exception for injuries sustained as a result of negligent construction of a swale); *Medicus v. Upper Merion Township*, 82 Pa. Commw. 303, 475 A.2d 918 (Pa. Cmwlth. 1984) (township could be liable under utility service facilities' exception for injuries sustained as a result of negligence maintenance of culverts).

85. As a direct and proximate result of the City of Erie and Erie Water Works' negligence, Plaintiffs' Property has been damaged in the following manner:

   a. Enduring intermittent flooding in the basement;

   b. Damage to the interior fixtures of the Property;

   c. Costs associated with remediating the water damage on the Property;

   d. Costs associated with the installation of a new water management system, including french drains, to remove the stormwater infiltrating the Property;

   e. Lost profits;

   f. Lost business opportunity;

   g. Lost goodwill; and

   h. Other harm which is likely to accrue in the future as the reasonably foreseeable result of the City's negligent conduct.

WHEREFORE, Plaintiffs Tenth and State, LLC, and Swing Project Erie, LLC respectfully request that this Honorable Court enter judgment in its favor and against Defendant City of Erie and Erie Water Works in an amount in excess of $75,000.00, along with all other

relief permitted by law.

**COUNT III - NEGLIGENT DESIGN**

*Tenth and State, LLC and Swing Project Erie, LLC*
*v.*
*City of Erie and Jason Sayers*

86. The averments in the foregoing paragraphs are incorporated by reference herein, as if set forth in full below.

87. Mr. Sayers owed a duty of care to Plaintiffs and others to design the State Street streetscape project in a manner that complied with existing stormwater management requirements, and which at a minimum, did not displace stormwater into the basement of the Plaintiffs' Property.

88. Mr. Sayers breached that duty of care by, among other things, misidentifying the Property as being without a basement, placing soil cells in close proximity beside the Property, and failing to account for exit of stormwater from the soil cells.

89. As a direct and proximate result of Mr. Sayers' breach of his duty of care, Plaintiffs have suffered water damage to the basement of the Property.

90. Such damage includes:

a. Enduring intermittent flooding in the basement;

b. Damage to the interior fixtures of the Property;

c. Costs associated with remediating the water damage on the Property;

d. Costs associated with the installation of a new water management system, including french drains, to remove the stormwater infiltrating the Property;

e. Lost profits;

f. Lost business opportunity;

  g. Lost goodwill; and

  h. Other harm which is likely to accrue in the future as the reasonably foreseeable result of the City's negligent conduct.

91. The City of Erie is vicariously liable for all the harm caused to Plaintiffs by Mr. Sayers' negligent design of the State Street streetscape project.

WHEREFORE, Plaintiffs Tenth and State, LLC, and Swing Project Erie, LLC respectfully request that this Honorable Court enter judgment in its favor and against Defendant City of Erie and Jason Sayers in an amount in excess of $75,000.00, along with all other relief permitted by law.

        Respectfully submitted,

        MIZNER LAW FIRM

        By: /s/ John F. Mizner

        John F. Mizner

        PA Supreme Court ID 53323
        jfm@miznerfirm.com

        Joseph Caulfield
        PA Supreme Court ID 322823
        jpc@miznerfirm.com

        311 West Sixth Street
        Erie, Pennsylvania 16507
        (814) 454-3889

        *Attorneys for the Plaintiff*