IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TENTH AND STATE, LLC, and<br>SWING PROJECT ERIE, LLC<br>    Plaintiffs,<br><br>vs.<br><br>THE CITY OF ERIE,<br>ERIE WATER WORKS,<br>SCOTT HEITZENRATER,<br>ANDREW ZIMMERMAN, and<br>JASON SAYERS,<br>    Defendants. | C.A. No. 1:24-CV-176 |

MEMORANDUM OPINION

I.    Introduction

Pending before this Court is a Motion to Dismiss (ECF No. 14), seeking dismissal of Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6). Plaintiffs Tenth and State, LLC, and Swing Project Erie, LLC, allege (1) First Amendment retaliation under 42 U.S.C. § 1983 against individual City officials for withholding an occupancy permit after Plaintiffs petitioned the City regarding water damage (ECF No. 1 ¶¶ 73–80), and (2) state-law negligence claims against the City and its engineer for defective design of a streetscape project (*id.* ¶¶ 81–91). For the following reasons, the Motion to Dismiss will be granted in part and denied in part.

II.    Factual Allegations

In their complaint, Plaintiffs explain that they own and operate a commercial building located at 5 W. Tenth Street in Erie, Pennsylvania, which underwent extensive renovations in 2023 to accommodate a "Five Iron" golf franchise and an arcade/bar concept called Café 7-10. ECF No.

1

1 ¶¶ 13–19. The renovations included interior demolition, façade updates, and structural improvements across three floors, with a projected opening date in mid-April 2024 to coincide with the Masters golf tournament. *Id.* ¶¶ 16–20.

Concurrently, the City of Erie was undertaking a $5.8 million "streetscape" project on State Street, which included new sidewalks, drainage systems, and "soil cells" designed to support tree growth. *Id.* ¶¶ 21-22. The project was engineered by City of Erie employee Jason Sayers whose plans allegedly misidentified Plaintiffs' building as lacking a basement, leading to the alleged negligent installation of soil cells near the property. *Id.* ¶¶ 23–27. Plaintiffs contend that the design of the soil cells allowed stormwater to infiltrate their basement, which had no prior history of flooding. *Id.* ¶¶ 33–35.

In October 2023, shortly after the City installed the new sidewalk and soil cells, Plaintiffs observed water seepage into their basement. *Id.* ¶ 34. The issue worsened after a heavy rainfall in February 2024, allegedly causing significant flooding and delaying electrical work. *Id.* ¶¶ 37–39. Plaintiffs requested testing from Erie Water Works ("EWW") which promptly concluded that the water was likely not "city water" as it would contain certain chemicals. *Id.* ¶ 41. Plaintiffs then received conflicting information from City of Erie Field Supervisor Todd Bruno, who advised that EWW's potable water pipes were likely the source of the water. *Id.* ¶ 43. Plaintiffs then commissioned independent testing, which suggested the water contained chloride from road salt, implicating City stormwater systems. *Id.* ¶¶ 44–46. The City of Erie, however, according to the Plaintiffs, afforded no redress and instead directed Plaintiffs to contact the City Solicitor's Office. *Id.* ¶ 48. Plaintiffs then petitioned the Solicitor's Office requesting redress on February 29, 2024. *Id.* ¶ 49. Days later on March 5, 2024, Defendant Scott Heitzenrater, a City building inspector, informed Plaintiffs that their State Street entrance sidewalk—installed by the City months

earlier—exceeded the 2% slope permitted under accessibility codes, jeopardizing their occupancy permit. *Id.* ¶ 52. Plaintiffs argue this was retaliatory enforcement, as the notice came five days after their demand to the Solicitor's Office regarding the water issue. *See id.* ¶ 77. Defendants counter that the slope violation resulted from Plaintiffs' unilateral decision to relocate their entrance doors, altering the originally compliant design. ECF No. 15 at 4–5.

After protesting to Heitzenrater regarding his enforcement action, Defendant Andrew Zimmerman, the City's Manager of the Bureau of Code Enforcement, accused Plaintiffs of threatening Heitzenrater. ECF No. 1 ¶ 60. Plaintiffs characterize this as further retaliation, while Defendants maintain they were simply enforcing code requirements. ECF No. 15 at 11–12. Ultimately, Plaintiffs replaced the sidewalk at their own expense, installed French drains to remedy the stormwater problem and opened two months late, claiming over $70,000 in water-related damages and $110,000 in lost profits. ECF No. 1 ¶¶ 68–71.

Both Plaintiffs advance three legal claims: at Count I, a First Amendment retaliation claim against City Building Inspector Heitzenrater and City Manager of Code Enforcement Zimmerman; at Count II, a negligence claim against the City of Erie and Erie Water Works; and, at Count III, a negligent design claim against the City and City Engineer Sayers.

**III.    Procedural History**

In response to the filing of the complaint, Defendant Erie Water Works answered and Defendants Heitzenrater and Zimmerman moved to dismiss. ECF No. 16; ECF No. 14. The motion to dismiss centers primarily on the First Amendment retaliation claim, offering only a cursory argument with respect to the negligence claims. Plaintiff opposed the motion to dismiss (ECF No. 22) and a reply brief was filed (ECF No. 24).

The motion to dismiss filed by Heitzenrater and Zimmerman is self-titled (and electronically filed) as if it were only on behalf of those two Defendants, which means that Defendants City of Erie and Sayers neither answered nor moved to dismiss. Following this omission, Plaintiffs filed a Request for Entry of Default against non-answering and non-moving Defendants City of Erie and Sayers. ECF No. 24.[1] The same day, counsel for City of Erie and Sayers filed a "Response to Plaintiffs' Request to Enter Default, or alternatively Motion to Amend Defendants' Motion to Dismiss Plaintiffs' Complaint." ECF No. 23. In their filing, the City of Erie and Sayers argue that the Request for Default be denied and that the pending motion to dismiss be amended to "to include a Motion to Dismiss Count II and III on behalf of Defendants City of Erie and Jason Sayers."

**IV.    Standard of Review**

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court accepts as true all well pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. A court need not accept as true unsupported conclusions and unwarranted inferences. *Doug Grant, Inc. v.*

---

[1] It is unclear to this Court why the Clerk of Court did not enter default.

4

*Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000). Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678.

V. Discussion and Analysis

A. The Retaliation Claim under § 1983[2]

Defendants Heitzenrater and Zimmerman move to dismiss the retaliation claim against them for failure to state a *prima facie* claim. "To plead retaliation for the exercise of First Amendment rights, a plaintiff must allege '(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action.'" *Mirabella v. Villard*, 853 F.3d 641, 649 (3d Cir. 2017) (quoting *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006)).

At the first prong of a retaliation claim, a plaintiff must allege conduct protected by the Constitution. That protection encompasses the exercise of core political freedoms—speech, assembly, and, critically, the right to petition the government for redress of grievances. *See id.* at 648.

Plaintiffs here allege they engaged in such protected activity by petitioning municipal officials. They are correct that the right to petition ranks among the "most precious of the liberties

---

[2] As a threshold matter, to state a claim under § 1983, a plaintiff must demonstrate both a deprivation of a federally protected right and that the deprivation was caused by conduct fairly attributable to the state. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The "color of state law" requirement serves as a critical gatekeeping function, ensuring that § 1983 liability attaches only to actions that reflect the exercise of governmental power rather than purely private conduct. *West v. Atkins,* 487 U.S. 42, 48 (1988). Plaintiffs have alleged that Heitzenrater and Zimmerman acted under color of law. ECF No. 1, ¶¶ 5, 6.

safeguarded by the Bill of Rights." *BE&K Constr. Co. v. NLRB*, 536 U.S. 516, 524 (2002) (quoting *United Mine Workers v. Ill. State Bar Ass'n*, 389 U.S. 217, 222 (1967)). Protected conduct "literally involves petitioning the government, either through formal mechanisms, such as lawsuits, grievances and workers compensation claims, or informal mechanisms, such as letters to the government." *Gardner v. Barry*, 2010 WL 4853885, at *10 (M.D. Pa. Nov. 23, 2010).

Defendants argue that the Plaintiffs' February 29, 2024, email to the City Solicitor—which they concede "arguably involve[d] a petition"—did not require a government response. ECF No. 15, at 9. That argument—to the extent that Defendants' intended to raise it for purpose of disputing this element—misses the mark. The First Amendment secures the right to petition, not the right to a reply. *See Smith v. Arkansas State Highway Emp., Loc. 1315*, 441 U.S. 463, 465 (1979). What matters is whether Plaintiffs' conduct—here, the act of petitioning—falls within the First Amendment's protections. It does. *See Hill v. Barnacle*, 509 F. Supp. 3d 380, 392 (W.D. Pa. 2020) ("The Petition Clause shields individuals from retaliation for filing non-sham grievances or lawsuits."). Plaintiffs have properly pleaded this element of their claim.

Next, Defendants argue that Plaintiffs have not satisfied the second prong of a *prima facie* retaliation claim – the so-called adverse action prong. The relevant inquiry at this step of the analysis is whether the challenged conduct "would deter a person of ordinary firmness from exercising his constitutional rights." *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). Government actions, which standing alone do not violate the Constitution, may still be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right. *Allah v. Seiverling*, 229 F.3d 220, 224-25 (3d Cir. 2000). *See also Currie v. 21st Century Cyber Charter Sch.*, 2024 WL 3033614, at *11 (E.D. Pa. June 17, 2024). "A First Amendment retaliation claim will lie for any individual act which meets this 'deterrence

threshold,' and that threshold is very low: as we said in *Suppan [v. Dadonna]*, a cause of action is supplied by all but truly de minimis violations." *O'Connor v. City of Newark*, 440 F.3d 125, 127–28 (3d Cir. 2006 (citing *Suppan*, 203 F.3d 228, 234–35 (3d Cir. 2000)).

Plaintiffs allege that Heitzenrater and Zimmerman retaliated against them for reporting stormwater runoff seeping into their property by threatening to withhold an occupancy permit for non-compliance. ECF No. 1 ¶¶ 52, 57. On February 29, 2024, Plaintiffs emailed the Solicitor, detailing their theory of the City's liability for the stormwater issue. *Id.* ¶ 49. Plaintiffs claim that on March 5, 2024, Heitzenrater informed Plaintiff's contractor that an occupancy permit would be denied unless Plaintiffs corrected the slope of an adjacent sidewalk. *Id.* ¶ 55. According to Plaintiffs, Heitzenrater's communication to Plaintiffs' contractor, amounts to selective enforcement designed to punish the business for its February 29th petition.

While both parties devote considerable attention to parsing the precise language of their communications, our inquiry at this stage is more circumscribed. Under *Mirabella*, the question before us is straightforward: Would Heitzenrater's alleged selective enforcement, by way of the withholding of an occupancy permit, reasonably be perceived as retaliatory, such that it might deter a person of ordinary firmness from exercising the right to petition the government? The substance of the parties' email exchange holds little bearing on this inquiry, as the communication at issue contained no explicit conditional threat—no "if-then" statement suggesting any coercion. Instead, as pleaded, the communications function as actual notice of an adverse regulatory action in progress.

Plaintiffs have alleged that Heitzenrater engaged in selective enforcement. Plaintiffs also claim that this enforcement imposed substantial financial burdens in retaliation for protected speech that would deter a person of ordinary firmness from asserting his First Amendment right.

7

Where petitioning the government invites selective enforcement and imposes crippling costs, a person of ordinary firmness may well be chilled from exercising that right. That Plaintiffs ultimately bore these costs does not defeat their case as the Court's inquiry looks to whether such actions would deter an ordinary citizen, not an exceptionally determined one. *Mirabella,* 853 F.3d at 650. These allegations suffice to satisfy this prong at this stage against Defendant Heitzenrater.

As Defendant Zimmerman, Plaintiffs' allegation is limited. They allege that after they protested Heitzenrater's retaliatory treatment, Zimmerman "doubled down on the City's position by claim[ing] [in an email] Plaintiffs were 'threatening' city employees, when in fact it was the City's employees who were threatening to withhold an occupancy permit, in blatant retaliation for Plaintiffs' complaints about the flooding on the Property." ECF No. 1, ¶ 78. The email at issue states in full:

> "The response you sent Scott Heitzenrater is of a threating [sic] nature. Scott takes great pride while performing his job duties and understands the codes better than most inspectors in the State. Because you moved the doors and changed the egress and accessible requirements you are required under State law to comply with A117.1."

ECF No. 1 at 60.

Zimmerman's email is nothing more than a minor admonishment, criticism, or reprimand which does not rise to the level of an adverse action. *See Revell v. City of Jersey City*, 394 F. App'x 903, 906 (3d Cir. 2010); *Adams v. Ross Twp.*, 2021 WL 972520, at *5 (W.D. Pa. Mar. 16, 2021). At most, this communication amounts to a rebuke offered in defense of a colleague following Plaintiffs' own email to Heitzenrater which warned, "This response is going to lead to a bad outcome for you and the City. We will be in touch." ECF No. 1 ¶ 58.[3] Zimmerman's reply merely

---

[3] The Defendants advance an argument that, if accepted, would prove fatal to their own motion to dismiss at this stage. They contend that Plaintiffs should be held to a "matter of public concern"

reiterates the City's stated position regarding Plaintiffs' petition surrounding the water seepage. Accordingly, this Court finds that Plaintiffs failed to plead that Defendant Zimmerman has engaged in adverse action. Accordingly, because Plaintiffs have failed to state a *prima facie* case of retaliation against Defendant Zimmerman, the claim will be dismissed. Because this is the sole claim against him, he will be dismissed from this action.

At the final step of their *prima facie* claim against Defendant Heitzenrater, Plaintiffs must allege the link between the protected conduct and the adverse action. To establish the necessary causal connection, a plaintiff must show "either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing." *Lauren W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). When the temporal proximity between the protected activity and the adverse action is 'unusually suggestive,' it is sufficient standing alone to create an inference of causality…." *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007). Plaintiffs argue that the five-day period between their petition to the City and Heitzenrater's alleged threat of selective enforcement meets the unusually suggestive temporal proximity requirement. ECF No. 22 at 11.

The chronology of events here supports the inference urged by Plaintiffs. On February 29, 2024, Plaintiffs alleged that they submitted a detailed complaint to the City Solicitor regarding

---

pleading standard for the emails exchanged between Plaintiffs and Heitzenrater. ECF No. 15 at 10. Were we to adopt that position, however, we would then need to "make an independent examination of the whole record" to ensure that "the judgment does not constitute a forbidden intrusion on the field of free expression." *Snyder v. Phelps*, 562 U.S. 443, 453 (2011) (citing *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 499 (1984)) (emphasis added). *See also e.g., Hill v. Borough of Kutztown*, 455 F.3d 225, 242–43 (3d Cir. 2006)("[W]e cannot determine in this procedural posture whether the speech involved a matter of public concern. That determination must be made after an examination of "the content, form, and context of [the] statement, as revealed by the whole record." (internal citations omitted).

stormwater damage allegedly caused by municipal construction. Just five days later—only three business days given the intervening weekend—the City informed Plaintiffs' contractor that his occupancy permit would be withheld absent costly sidewalk repairs.

Courts have consistently recognized that gaps measured in days—not weeks or months—suffice to establish causation at the pleading stage. *Starnes v. Butler Cnty. Ct. of Common Pleas*, 971 F.3d 416, 423 (3d Cir. 2020) (days-long proximity recognized as unusually suggestive to support causation); *Hill v. Barnacle*, 509 F.Supp.3d 380, 393 (M.D. Pa. 2020) (two-day gap conclusive); *Kostin v. Bucks Cmty. Coll.* (Nursing Dep't), 2022 WL 952729, at *11 (E.D. Pa. Mar. 30, 2022) ("Unusually suggestive temporal proximity means within a few days but no longer than a month."). Accordingly, the five-day interval between Plaintiffs' petition and Heitzenrater's threat of the permit denial is sufficiently suggestive of retaliation to satisfy the causation element at this early stage of the litigation.

Finally, in their motion to dismiss, Defendants argue alternatively that if Plaintiffs have stated a *prima facia* retaliation claim, both Heitzenrater and Zimmerman are shielded from suit by qualified immunity. ECF No. 24 at 5. The Third Circuit has articulated a three-part framework to assess whether a municipal official is entitled to qualified immunity. First, a plaintiff must allege a violation of a statutory or constitutional right. Second, the right at issue must have been clearly established at the time of the alleged misconduct. And third, a reasonable official in the defendant's position would have understood that the challenged conduct violated that right. *Doe v. Cnty. of Ctr., PA*, 242 F.3d 437, 454 (3d Cir. 2001) (citing *Rouse v. Plantier*, 183 F.3d 192, 196–97 (3d Cir. 1999)). The latter two prongs demand an "objective legal reasonableness" inquiry of an official's action, assessed considering legal rules that were "clearly established" at the time the

officials took the action. *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). Throughout the inquiry, the officials' subjective intent is irrelevant. *Anderson*, 483 U.S. 635 at 639.

First, as established above, Plaintiffs have sufficiently pleaded a First Amendment retaliation claim against Defendant Heitzenrater. The Complaint alleges: (1) protected petitioning activity (the February 29, 2024 email to the City Solicitor); (2) adverse action (the March 5, 2024 threat of withholding the occupancy permit); and (3) a causal link (the unusually suggestive five-day gap). These allegations, if proven, would violate Plaintiffs' clearly established right to be free from retaliation for petitioning the government.

Second, the right at issue—freedom from retaliation for protected petitioning activity—was "clearly established" long before 2024. *See, Smith v. Arkansas State Highway Emp.*, 441 U.S. 463, 465 (1979) (government retaliation for petitions violates the First Amendment).

Third, the critical question is whether a reasonable code enforcement officer in Heitzenrater's position would have understood that the retaliatory withholding of an occupancy permit in response to Plaintiffs' petition would violate the First Amendment.

The Complaint alleges that Heitzenrater's demand for sidewalk repairs—which Plaintiff contends were the City's own responsibility—was a pretextual enforcement action taken days after Plaintiff's protected petition. If true, no reasonable official could believe that selectively withholding a permit to punish petitioning is lawful. *See, e.g., Neuberger v. Gordon*, 567 F. Supp. 2d 622, 641 (D. Del. 2008) (citing *DeLoach v. Bevers*, 922 F.2d 618, 619 (10th Cir. 1990) ("unlawful intent inherent in ... retaliatory action places it beyond the scope of ... qualified immunity if the right retaliated against was clearly established.").

Accordingly, at this early stage of the litigation, Plaintiffs have pleaded facts sufficient to overcome qualified immunity. The right to be free from retaliatory permit denials was clearly

established, and a reasonable official in Heitzenrater's position would have known that such conduct—if motivated by retaliation—was unconstitutional. Heitzenrater is not entitled to qualified immunity on the pleadings.

### B. The State Law Negligence Claims

Plaintiffs raise two separate negligence claims: first, negligence against the City of Erie and Erie Water Works based on breach of a duty to construct, inspect and maintain its real property, including its streets, sidewalks, soil cells, and stormwater maintenance systems, in a reasonably careful manner to avoid injury to adjacent properties (ECF No. 1 ¶ 82) and second, negligent design against the City and Sayers who allegedly breached their duty of care by negligently designing the State Street streetscape project, which proximately caused flooding and damage to the Property's basement (*id.* at ¶¶ 38–39, 89).

In the motion to dismiss, the City of Erie and Sayers present a cursory two-paragraph argument in support of dismissing both negligence claims, invoking immunity under the Pennsylvania Political Subdivision Tort Claims Act ("Tort Claims Act"). ECF No. 15 at 22. Because the motion to dismiss was erroneously filed on behalf of only Heitzenrater and Zimmerman, Plaintiffs have not responded to this abbreviated argument to dismiss the negligence claims. The procedural missteps flowing from the initial filing of the motion to dismiss on behalf of only Heitzenrater and Zimmerman have compromised the briefing. Given the deficiencies in briefing, the Court will not undertake analysis of the issue on this incomplete briefing. Accordingly, Defendants City of Erie and Sayers will be afforded the opportunity to file an amended motion to dismiss addressing the negligence claims.

## VI. Conclusion

For these reasons, the Court will deny the Motion to Dismiss Plaintiffs' §1983 retaliation claim against Scott Heitzenrater in his individual capacity. Further, the Court will grant the Motion to Dismiss the individual capacity retaliation claim against Zimmerman. The Motion to Dismiss will be dismissed in all other respects.

An appropriate Order follows.